IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| KRISTIAN FALKENSTEIN | : | CIVIL ACTION |
| --- | --- | --- |
| *Plaintiff* | : | |
| | : | NO. 14-5994 |
| v. | : | |
| | : | |
| SANTANDER BANK, N.A. | : | |
| *Defendant* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                MAY 27, 2015

# MEMORANDUM OPINION

## INTRODUCTION

Kristian Falkenstein ("Plaintiff") sued Santander Bank, N.A., ("Defendant") to enforce his rights under the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. §1693f. Prior to a scheduled arbitration hearing, Defendant served upon Plaintiff an offer of judgment pursuant to Federal Rule of Civil Procedure ("Rule") 68, which Plaintiff accepted. Accordingly, judgment was entered in favor of Plaintiff and against Defendant in the amount of $1,001.00, together with interest and costs. Thereafter, the arbitration hearing was cancelled, and Plaintiff filed a petition for reasonable attorneys' fees and costs.

Before this Court is the *motion for attorneys' fees and costs*, [ECF 23], Defendant's opposition thereto, [ECF 24], and Plaintiff's reply. [ECF 27]. The issues have been fully briefed, and for the reasons stated herein, the motion for attorneys' fees and costs is granted, *in part*.

## BACKGROUND

To provide context for the instant motion, the factual and procedural posture of this matter is briefly summarized as follows:

> This lawsuit stems from a domestic issue between Plaintiff and his wife, Roxana Maracineanu, who are in the midst of a divorce. From 2009, Plaintiff pursued an acting career in California but became hospitalized for "significant

psychiatric problems," having been diagnosed with bipolar disorder with psychotic behavior and requiring medication which he refused to take.[1] After his release from a psychiatric facility on May 21, 2013,[2] Plaintiff left California and returned to his parents' home in Pennsylvania to recuperate,[3] which left Ms. Maracineanu obligated to wrap up her and Plaintiff's affairs in California. In the meantime, Plaintiff had depleted their joint checking account, leaving his wife responsible for bounced checks, bills, and credit card payments.[4]

During the marriage, Plaintiff would sign blank checks for use as necessary.[5] Further, Ms. Maracineanu testified at her deposition that Plaintiff gave her the password for his Santander bank account.[6] As a result of Plaintiff's hospitalizations in 2011 and 2012, Ms. Maracineanu deposited one signed check for $30,000.00 into her own bank account to pay for the bounced checks and Plaintiff's medical bills.[7] The balance was deposited by Ms. Maracineanu's counsel into an attorney trust account.[8] Thus, all the allegedly stolen money is accounted for.

Procedurally:

On May 12, 2014, Plaintiff filed a complaint under the Electronic Funds Transfer Act, or EFTA, against Defendant in the Circuit Court of Montgomery County, Maryland, claiming that Ms. Maracineanu made "unauthorized transfers" from his Santander account in the amount of $30,500.00, "forged checks to access the Plaintiff's funds,"[9] after which Defendant did not provisionally re-credit his account as required by EFTA.[10] On July 14, 2014, the case was removed to the United States District Court for the District of Maryland and, subsequently, transferred to this Court on October 21, 2014, upon the request of Defendant. [ECF 1]. At the preliminary pretrial conference held on November 25, 2014, this Court ordered that the matter be transferred to the court's arbitration track and placed the action in civil suspense, pending the outcome of the arbitration hearing. [ECF 13]. An arbitration hearing was scheduled for February 26, 2015. [ECF 14].

---

[1] *See* Compl. ¶5, [ECF 1-2]; *see also* August 12, 2013 letter from counsel for Ms. Maracineanu to Sovereign Bank Corporate External Investigations ("Hartnett Letter") 1. [ECF 24-2].
[2] Plaintiff was admitted into Del Amo Hospital in California on April 25, 2013. Compl. ¶¶9, 12.
[3] Compl. ¶12.
[4] Hartnett Letter 1.
[5] *Id.*
[6] Defendant's Opposition to Plaintiff's Petition for Attorneys' Fees 3. [ECF 24].
[7] Ms. Maracineanu issued payments for $1,334.59; $528.00 for credit card charges for Plaintiff's hospital stays and $806.39 as reimbursement on their closed joint checking account. She is holding $1,712.69 for payment as a guarantor on a long standing medical bill to Victor Valley Hospital for a 2011 stay. Hartnett Letter 2.
[8] *Id.*
[9] Compl. ¶11.
[10] *Id.* at ¶14.

On February 9, 2015, prior to the arbitration hearing, Defendant served onto Plaintiff an offer of judgment pursuant to Rule 68. Plaintiff accepted the offer on February 20, 2015. [ECF 20]. On February 23, 2015, the Clerk of Court issued an Order entering judgment in favor of Plaintiff and against Defendant in the amount of $1,001.00, together with interest and costs. [ECF 22]. Thereafter, Plaintiff filed the instant petition requesting reasonable attorneys' fees and costs, as stipulated for in the offer of judgment. [ECF 21]. In his petition, Plaintiff seeks an award of $16,972.84, in attorneys' fees, and $1,242.08, in costs. Defendant opposes the motion.

**LEGAL STANDARD OF REVIEW**

In the case of any successful action to enforce liability under EFTA, the statute provides for payment of reasonable attorneys' fees and costs, as determined by the court. *See* 15 U.S.C. §1693m(a)(3). The party seeking an award for attorneys' fees has the burden of proving the reasonableness of the request by submitting evidence "supporting the hours worked and rates claimed." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). In a statutory fee case, such as this, the party opposing the fee award has the burden to challenge the reasonableness of the requested fee, by affidavit or brief with sufficient specificity so as to give fee applicants notice. *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990) (citing *Bell v. United Princeton Properties, Inc.*, 884 F.2d 713, 721 (3d Cir. 1989)). Once the adverse party raises objections to the fee request, the district court has discretion to adjust the requested fee award in light of those objections. *Rode*, 892 F.2d at 1183; *Bell*, 884 F.2d at 721.

When presented with a motion for attorneys' fees, a district court must first determine if the applicant is a prevailing party and, if so, whether the fee requested is reasonable. A plaintiff may be considered a prevailing party for attorneys' fees purposes if he succeeds on any significant issue in litigation which achieves some of the benefit the party sought in bringing suit. *Hensley*, 461 U.S. at 433 (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278-79 (1st Cir. 1978) (quotation marks omitted)). However, "[t]his is a generous formation that brings the plaintiff

only across the statutory threshold. It remains for the district court to determine what fee is 'reasonable.'" *Dee v. Borough of Dunmore*, 2013 WL 685144, at *2 (M.D. Pa. Feb. 25, 2013) (quoting *Hensley*, 461 U.S. at 433).

To determine a reasonable fee, a court must calculate the "lodestar;" *i.e.*, the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433; *see also McKenna v. City of Philadelphia*, 582 F.3d 447, 455 (3d Cir. 2009). Once the lodestar is determined, the court must decide whether additional adjustments are appropriate. *McKenna*, 582 F.3d at 455. The petitioner must submit verified itemization of the hours worked and the reasonable controlling hourly rate. *Hensley*, 461 U.S. at 433. If opposing the fee petition, a defendant has the burden of challenging the reasonableness of the requested fee. *Rode*, 892 F.2d at 1183.

Instantly, Defendant does not dispute that Plaintiff is the prevailing party since judgment has been entered in Plaintiff's favor and against Defendant. *See Bonenberger v. Plymouth Twp.*, 1998 WL 472469, at *2 (E.D. Pa. July 27, 1998) (a party who has obtained an enforceable judgment as to the party against whom fees are sought is a prevailing party) (citing *Farrar v. Hobby*, 506 U.S. 103, 111 (1992)). Neither party disputes that Plaintiff is entitled to reasonable attorneys' fees and costs. The parties, however, disagree on the reasonableness of the amount of attorneys' fees sought.

## DISCUSSION

Defendant's Rule 68 offer of judgment provides, in its pertinent part, as follows:[11]

---

[11] "At least 14 days before the date set for trial, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued. If, within 14 days after being served, the opposing party serves written notice accepting the offer, either party may then

[D]efendant Santander Bank, N.A. ("Santander") hereby offers to allow judgment to be taken against it in this action as to all claims asserted against it by plaintiff Kristian Falkenstein ("Plaintiff"), in the amount of (a) One Thousand and One Dollars ($1001.00) payable to Kristian Falkenstein; and (b) all reasonable costs incurred in this action to date, including reasonable attorneys' fees, as determined by the Court, payable to the Plaintiff.[12]

Pursuant to the offer of judgment, Plaintiff filed a petition requesting $16,972.84 in attorneys' fees based on nearly 58 hours[13] of work performed by six attorneys (amongst four firms) who charged rates of $200.00 to $395.00 per hour, and one paralegal who charged a rate of $100.00 per hour, as well as $1,242.08 in costs related to expenses from the same.[14] This Court will limit the analysis to the issue of the reasonableness of the attorneys' fees sought and will first analyze the hours spent.

*Hours Reasonably Expended*

In calculating the hours reasonably spent, a court should "review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434; *Pa. Envtl. Def. Found. v. Canon-McMillan School Dist.*, 152 F.3d 228, 232 (3d Cir. 1998); *see also Dee*, 2013 WL 685144, at *3. Where a movant's documentation of the hours expended is inadequate, "the district court may reduce the award accordingly." *Hensley*, 461

---

file the offer and notice of acceptance, plus proof of service. The clerk must then enter judgment." Fed. R. Civ. P. 68(a).
[12] Defendant's Offer of Judgment. [ECF 20-1].
[13] This figure includes $456.00 for the 1.9 hours spent preparing Plaintiff's reply to Defendant's opposition.
[14] In support of his petition for attorneys' fees and costs, Plaintiff has submitted the following: (1) the affidavit of Darren L. Harrison, Esquire, partner at Stalker, Vogrin & Frimet, LLP; (2) an invoice from SVF reflecting the exact amount of time and rates billed by each attorney and paralegal on particular activities; (3) the affidavit of Peter L. Klenk, Esquire, principal of the Law Offices of Peter L. Klenk & Associates; (4) the declaration of Sheraz Barkat, Esquire, of Barkat Law Firm; (5) the declaration of Norman M. Valz, Esquire; and (6) the fee schedule rates established by Community Legal Services, Inc. [ECF 23-2].

U.S. at 433. As noted in *Hensley*, lawyers are required to use judgment when billing their clients so as not to bill clients for "excessive, redundant, or otherwise unnecessary" hours. *Id.* at 434. Likewise, "[h]ours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." *Id.* at 434 (citations omitted). Ultimately, the court has "substantial discretion in determining what constitutes . . . reasonable hours." *Lanni v. New Jersey*, 259 F.3d 146, 149 (3d Cir. 2001).

In his motion, Plaintiff seeks attorneys' fees for hours billed from September 1, 2013, to April 15, 2015, by four distinct groups of attorneys; *to wit*:

    *a.*    *Law Offices of Peter L. Klenk & Associates*

Plaintiff requested reasonable attorneys' fees for Peter L. Klenk, Esquire, and Glen H. Ridenour II, Esquire, of the Law Offices of Peter L. Klenk & Associates ("PKA"), in the amount of $2,079.00, invoiced for work performed from September 1, 2013, to December 31, 2013. During this time period, Attorneys Klenk and Ridenhour reviewed and analyzed correspondence from Plaintiff in preparation for filing a complaint against Defendant, and explored settlement options.[15]

Defendant contends that the fees allegedly owed to PKA are not recoverable because counsel never entered an appearance or performed work towards resolution of this matter; fees billed appear to be for hours devoted to Plaintiff's divorce action and not this matter; hours billed precede the underlying state court complaint filed in May 2014; and the work performed from September 1, 2013, to September 30, 2013, was not properly documented.

Notably, a fee petition should include "some fairly definite information as to the hours devoted to various general activities, *e.g.*, pretrial discovery, settlement negotiations, and the

---

[15] *See* Affidavit of Peter L. Klenk, Esquire, Exhibit A. [ECF 23-2].

hours spent by various classes of attorneys. . . ." *Diaz v. Saucon Valley Manor, Inc.*, 2013 WL 6409450, at *2 (E.D. Pa. Dec. 9, 2013) (citing *Rode*, 892 F.2d at 1190 (quoting *Lindy Bros. Builders, Inc. of Phila. v. American Radiator & Standard Sanatory Corp.*, 487 F.2d 161, 167 (3d Cir. 1973)). Based on a careful review of PKA's invoices, it appears that Attorneys Klenk and Ridenhour represented Plaintiff in his claim against Defendant and in Plaintiff's divorce action. Time entries include "preparation of Complaint," documentation and report "from bank," as well as "correspondence to Sovereign Bank[16] concerning denial of claim for refund." These particular entries support Plaintiff's assertion that some of PKA's billed hours are attributed to the instant matter. However, PKA invoices also include billed hours for "questions about divorce plus request for money to be returned from wife's attorney," "telephone call with counsel for wife concerning settlement negotiation," and "correspondence to client concerning update and efforts to contact counsel for wife," presumably in the divorce matter. Since said entries are not specific, as required, this Court will exclude fees for hours devoted to the divorce action.

In addition, where the submitted documentation of the hours expended is inadequate, the requested amount for attorneys' fees may be reduced. *See Hensley*, 461 U.S. at 433. Here, the $1,209.50 fee amount for work performed from September 1, 2013, to September 30, 2013, will be excluded because no corresponding time entries were submitted. This Court will also reduce the number of hours that do not properly distinguish and/or document whether the hours worked pertain to this action or to the divorce proceedings. As an example, an entry made on November 18, 2013, reads, "telephone call with opposing counsel concerning filing response to settlement offer and filing of lawsuit." This entry only discloses that PKA was negotiating a settlement with "opposing counsel." However, the nature and timing of the negotiation is not clear. This entry

---

[16] Sovereign Bank became known as Santander Bank as of October 17, 2013.

occurred before either the divorce complaint or the complaint in this matter was filed, and could have referred to either action.[17] Because it is unclear whether this time entry concerns the instant matter or the divorce, the time will be excluded.

Finally, Defendant challenges any fee request made for PKA since neither Attorney Klenk nor Attorney Ridenhour had entered an appearance in this matter. This Court notes that attorneys' fees have been awarded, subject to reduction when appropriate, to counsel who performs work for a plaintiff, despite not having entered an appearance. *See, e.g., In re Nixon*, 404 F. App'x 575, 577 n. 2 (3d Cir. 2010); *Amy F. v. Brandywine Heights Area Sch. Dist.*, 1997 WL 672627, at *21 (E.D. Pa. Oct. 30, 1997). Thus, Defendant's argument on this issue lacks merit. Consequently, after deductions, what remains are only hours for work performed by Attorney Ridenhour. Therefore, based on this Court's calculations, PKA is entitled to reimbursement for 1.3 hours expended in this matter.[18]

### b. Barkat Law Firm

Next, Plaintiff requests an award of $2,093.34 in reasonable attorneys' fees for Sheraz Barkat, Esquire, who represented Plaintiff from April 10, 2014, to July 2, 2014, and assisted in filing the underlying complaint in the Circuit Court of Montgomery County, Maryland.[19] Defendant contends that the entire fee request should be denied because Attorney Barkat is not licensed in Maryland; none of the events at issue occurred in Maryland; neither party has any connection to Maryland (Plaintiff does not reside there, nor has he banked at Defendant's branch there); Attorney Barkat should not recover fees for preparing a motion for admission *pro hac vice* that was not filed; and none of the discovery for the state court case was served. Defendant,

---

[17] Defendant's Opposition to Plaintiff's Petition for Attorneys' Fees 1 n. 1.
[18] After deductions, only hours for work performed by Attorney Ridenhour remain.
[19] *See* Declaration of Sheraz Barkat, Esquire. [ECF 23-2].

however, provides no legal authority in support of its conclusory assertions that attorneys' fees should not be awarded for work performed in a purportedly improper venue or for preparing discovery which was never served.

Attorney Barkat's invoices reveal that he assumed the representation of Plaintiff after PKA withdrew. Attorney Barkat allocated 11 hours to, *inter alia*, drafting and filing the state court complaint, drafting discovery requests (*albeit* not served due to the matter being removed to federal court one week later), and discussions with Plaintiff and co-counsel.[20] None of these time entries describe Attorney Barkat familiarizing himself with the file or "getting up to speed." *Cf. Bonenberger*, 1998 WL 472469, at *7 ("Defendants should not bear the cost of plaintiff's decision to change horses in midstream.") (citing *Zhereberesky v. Mitsubishi Motor Sales of America, Inc.*, 1996 WL 548147, at *1 (E.D. Pa. Sept. 18, 1996) ("It is unreasonable to burden the defendant with fees for the time [plaintiff's counsel] spent familiarizing herself with a new file.")). Thus, this Court finds these hours to be reasonable. This Court will, however, deduct one hour for "review of documents and filing of complaint" as duplicative in light of the five hours already spent preparing the complaint.

Defendant challenges whether Attorney Barkat can recover fees for preparing a motion for admission *pro hac vice* that was never filed. While Attorney Barkat prepared the state court complaint, it was, however, signed and submitted by Michael A. Troy, Esquire. On June 11, 2014, Attorney Troy submitted a motion for the admission *pro hac vice* and certificate of prior special admissions of Attorney Barkat.[21] On July 7, 2014, the court entered an order admitting Attorney Barkat. This Court finds that the hours expended during Attorney Barkat's three-month

---

[20] *See id.*
[21] *See* Circuit Court for Montgomery County – Civil System docket.

representation of Plaintiff was reasonable, with the exclusion noted. Attorney Barkat is entitled to reimbursement for 9.46 hours expended in this matter.

    c. *Norman M. Valz, Esquire*

Plaintiff also seeks reasonable attorneys' fees in the amount of $500.00 for Attorney Valz, who represented Plaintiff at the November 25, 2014 preliminary pretrial conference.[22] Attorney Valz withdrew his appearance on January 21, 2015, when current counsel from the law firm Stalker, Vogrin, & Frimet, LLP, entered their appearance.[23] Defendant contends that Attorney Valz's fee should be excluded because he submitted no time sheets and, further, the time meeting with Plaintiff to familiarize himself with Plaintiff's claims are redundant. *See Bonenberger*, 1998 WL 472469, at *7 ("Defendants should not bear the cost of plaintiff's decision to change horses in midstream.") (citation omitted).

To support the application for attorneys' fees, Attorney Valz declared that he charged Plaintiff a flat rate retainer of $500.00 "for reviewing his matter, giving legal advice, and attending a Rule 26 Conference on his behalf."[24] Attorney Valz's invoice confirms the same, "Flat rate Retainer: Attendance at Scheduling Event," but does not include information regarding the time expended for each activity. This "block billing entry," describes numerous activities in a single time entry, *see Diaz*, 2013 WL 6409450, at *2, and information as to what hours were devoted to which activities is scant. *Cf. Rode*, 892 F.2d at 1191 (computer-generated time sheet, which included chronological time entries showing general nature and subject matter of attorneys' activities, sufficiently explained fees claimed).

---

[22] *See* Notice of Entry of Appearance dated November 25, 2014, docketed on December 5, 2014. [ECF 15].
[23] *See* Notice of Withdrawal of Appearance dated and docketed on January 21, 2015. [ECF 17].
[24] *See* Declaration of Norman M. Valz, Esquire. [ECF 23-2].

Notwithstanding, Attorney Valz appeared on behalf of Plaintiff at the November 25, 2014 preliminary pretrial conference, which required preparation and time. The preliminary hearing concluded with an order referring the matter to the federal arbitration program. For this appearance and for a reasonable period of time needed to prepare for it, Attorney Valz should be compensated. Although the Third Circuit Court of Appeals prefers the use of the lodestar method for determining attorneys' fees, *see In re Olick*, 221 B.R. 146, 153 (E.D. Pa. May 29, 1998) (bankruptcy court did not allow flat rate fee, noting that the lodestar method is the accepted means for determining attorneys' fees in the Third Circuit) (citing *In re Meade Land and Development Co., Inc.*, 527 F.2d 280, 283-84 (3d Cir. 1975)), this Court does not believe it necessary in this particular instance. Therefore, this Court will permit Attorney Valz' $500.00 flat fee stipulated in the retainer agreement with Plaintiff.

          *d.*      *Stalker, Vogrin, & Frimet, LLP*

Lastly, Plaintiff requests reasonable attorneys' fees in the amount of $11,844.50 for Darren L. Harrison, Esquire, Silje M. Roalsvik, Esquire, and Mary Angela Mastronardo, paralegal, from the firm Stalker, Vogrin, & Frimet, LLP ("SVF"), invoiced for work performed from January 16, 2015, to February 9, 2015, primarily to prepare for the scheduled arbitration hearing. Defendant challenges these fees as excessive: SVF billed over 39 hours of attorney time in 24 days; discovery had already closed with the exception of a deposition of a fact witness; this matter was set for non-binding arbitration in eight weeks; and Plaintiff was entitled to only $1,000.00 in statutory damages. This Court agrees, in part.

Attorney Harrison, a partner at SVF, attested to 20 years of experience in all phases of litigation, civil and complex, and to the experience and qualifications of Attorney Roalsvik, an associate. After reviewing SVF's detailed time sheets, this Court concludes that, in light of

Attorney Harrison's robust experience, attorney hours billed for certain routine tasks were excessive and warrant reduction, such as, *e.g.*: 3.5 hours for reviewing pleadings, Rule 26 disclosures and documents from Plaintiff in preparation to depose Ms. Maracineanu; one hour preparing a deposition outline for Ms. Maracineanu's deposition; 8.4 hours total roundtrip travel from Philadelphia to Washington, D.C., for Ms. Maracineanu's deposition (in *addition* to the 2.3 hours attending the deposition), which is typically a four-hour roundtrip train ride; 2.5 hours analyzing litigation strategy as to whether to obtain an affidavit from a Detective Haines and an expert on forensic handwriting to prove forgery, and issues of law related thereto; 1.6 hours analyzing the EFTA for elements to prove liability against Defendant and damages alleged by Plaintiff; and 2.2 hours analyzing Defendant's Rule 68 offer of judgment, essentially a one-paragraph document.[25] Consequently, the billed hours for these tasks will be reduced by one-half. This Court also finds it unreasonable to bill 0.8 hours for Ms. Mastronardo to produce withdrawal and entries of appearances and corresponding certificates of service, all standard form documents, and will reduce said tasks by one-half. Therefore, SVF is entitled to reimbursement for 29.4 hours expended in this matter.

*Reasonable Hourly Rate*

With regard to the reasonable hourly rate of the lodestar calculation, a movant such as Plaintiff bears the burden of "producing sufficient evidence of what constitutes a reasonable market rate for the essential character and complexity of the legal services rendered in order to make out a *prima facie* case." *Smith v. Philadelphia Hous. Auth.*, 107 F.3d 223, 225 (3d Cir. 1997). Defendant, as the non-movant, can contest the *prima facie* case by presenting appropriate evidence. *Id.* A reasonable hourly rate is "[g]enerally . . . calculated according to the prevailing

---

[25] *See* Rule 68 Offer of Judgment by Defendant Santander Bank, N.A. [ECF 20-1].

market rates in the relevant community," taking into account "the experience and skill of the . . . attorney and compar[ing] their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001) (quoting *Rode*, 892 F.2d at 1183); *Diaz*, 2013 WL 6409450, at *1. The prevailing market rate is usually deemed reasonable. *Public Interest Research Group v. Windall*, 51 F.3d 1179, 1185 (3d Cir. 1995). However, district courts may assign different rates to different tasks, regardless of who performed them. "Just as 'a Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn,' counsel should not be using 'highly priced talent for matters easily delegable to non-professionals or less experienced associates.'" *Reibstein v. Rite Aid Corp.*, 761 F. Supp. 2d 241, 259 (E.D. Pa. 2011) (quoting *Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3d Cir. 1983)).

To determine a reasonable hourly rate, the Third Circuit has approved the use of the well-developed fee schedule rates established by Community Legal Services, Inc., ("CLS") as one that fairly reflects the prevailing market rates in Philadelphia. *Maldonaldo*, 256 F.3d at 187-88. Here, Plaintiff seeks the following hourly billing rates:

- $240.00 for Attorney Harrison, a partner with 20 years of experience in civil and complex litigation.

- $205.00 for Attorney Roalsvik, an associate in practice at SVF for five years.

- $100.00 for Ms. Mastronardo, a paralegal with SVF.

- $200.00 for Attorney Barkat, practicing for three years in business and family law.

- $500.00 flat fee retainer for Attorney Valz.

- $395.00 for Attorney Klenk, who attests to 20 years of experience in estate litigation.[26]

- $295.00 for Attorney Ridenhour, with 19 years of experience in state and federal litigation.

The current CLS fee schedule provides for an hourly rate range of $435.00-$505.00 for attorneys with 16-20 years of experience; $200.00-$250.00 for attorneys with 2-5 years of experience; and $115.00-$140.00 for paralegals. Though Defendant generally challenges the motion for attorneys' fees, Defendant does not challenge the proposed billable rates. Since these proposed billable rates fall slightly below the prevailing market range noted in the CLS fee schedule and have not been challenged, this Court finds that the proposed billable rates are reasonable hourly rates and approves them for the professional services rendered by counsel and the paralegal. *Cf. Washington v. Phila. County Court of Common Pleas*, 89 F.3d 1031, 1036 (3d Cir. 1996) ("Where . . . the plaintiff has met his *prima facie* burden under the 'community market rate' lodestar test, and the opposing party has not produced contradictory evidence, the district court may not exercise its discretion to adjust the requested rate downward."); *see also McGuffey v. Brink's, Inc.*, 598 F. Supp. 2d 659, 670 (E.D. Pa. 2009) (approving of a $400.00 hourly rate for plaintiff's attorney in an employment case).

This Court notes that Attorney Roalsvik is an associate to Attorney Harrison and, therefore, is of the view that it was unreasonable for Attorney Harrison to bill hours for tasks easily delegable to Attorney Roalsvik. *See Reibstein*, 761 F. Supp. 2d at 259. For example, tasks such as: preparing draft responses and objections to Defendant's requests for admissions, document requests, and interrogatories; analyzing Plaintiff's memoranda regarding his claims

---

[26] As stated, after deductions from PKA invoices, no hours for work performed by Attorney Klenk remain.

14

under EFTA for litigation strategy and supporting evidence for arbitration; exchanging emails with Plaintiff regarding revisions to proposed draft responses to interrogatories, requests for admission, and document requests; preparing an email to the detective regarding payment for her trial appearance; analyzing documents from Plaintiff for possible production, privileged information, irrelevant information not subject to disclosure, and impact on his claims; and drafting a reply to Defendant's opposition to the fee petition. Since these are tasks that could have been done by Attorney Roalsvik, this Court will apply Attorney Roalsvik's hourly rate.

*Adjustment of Lodestar*

When calculating the number of hours reasonably expended and the reasonable hourly rate, a court may consider twelve factors identified by the Supreme Court as: (1) time spent and labor required; (2) novelty and difficulty of the questions; (3) skill requisite to perform the legal services properly; (4) preclusion of other employment by the attorney due to acceptance of the case; (5) customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) amount of time involved and the results obtained; (9) experience, reputation, and ability of the attorney; (10) undesirability of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. *Riverside v. Rivera*, 477 U.S. 561, 567-68 (1986) (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)); *see also* (*Navarro v. Monarch Recovery Mgt., Inc.*, 2014 WL 2805244, at *2-3, slip op. (E.D. Pa. Jun. 20, 2014) ("In certain cases, the *Johnson* factors may also be considered as a basis for adjusting the lodestar amount.") (citing *Hensley*, 461 U.S. at 434 n. 9); *Dee v. Borough of Dunmore*, 548 F. App'x 58, 64 (3d Cir. 2013) (reaffirming use of *Johnson* factors).

Plaintiff maintains that this matter involved "complex and novel legal issues" under EFTA and the Court should consider several *Johnson* factors in awarding the requested fee, such as the novelty and difficulty of the questions, time limitations imposed by the client or circumstances, and the undesirability of the case. On the other hand, Defendant counters that this is a "cookie-cutter, single-plaintiff [EFTA] case with a maximum of $1,000.00 statutory damages at issue. . . ." As required, this Court has reviewed Plaintiff's attorneys' billing records line by line to determine whether any adjustment to the lodestar is warranted. *See Evans v. Port Auth. of N.Y. & N.J.*, 273 F.3d 346, 361-62 (3d Cir. 2001). In arriving at the lodestar amount and reductions described above, this Court has considered all relevant factors, including the fact that current counsel began representing Plaintiff eight weeks prior to the scheduled arbitration, for which it undertook ardent preparations.

However, given the foregoing analysis of the reasonableness of the hours expended in arriving at the lodestar calculation, this Court concludes that Plaintiff's fee request of $16,972.84 will be reduced to $9,598.50, calculated as follows:

- Reasonable attorneys' fees for SVF in the amount of $6,713.00 for 29.4 hours, and paralegal fees in the amount of $110.00 for 1.1 hours.

- Reasonable attorneys' fees for Attorney Barkat in the amount of $1,892.00 for 9.46 hours.

- Reasonable attorneys' fees for Attorney Valz's flat rate retainer of $500.00.

- Reasonable attorneys' fees for PKA in the amount of $383.50 for 1.3 hours.

*Costs of Litigation*

Plaintiff also seeks recovery of $1,242.08 in costs, for which only $742.08 is accounted. Costs incurred by SVF total $563.08, adequately explained in Attorney Harrison's Affidavit.[27] Attorney Barkat has also provided a detailed invoice which includes $179.00 in expenses.[28] PKA attests to having incurred $250.00 "in additional fees and expenses" in preparation of its Affidavit, but provides no itemization of these expenses; thus, this amount is excluded. Attorney Valz's flat rate fee will be included, without parsing expenses. Therefore, this Court awards Plaintiff $742.08 in costs, reflecting a reduction for the unaccounted for expenses.

**CONCLUSION**

For the reasons stated herein, Plaintiff's motion for attorneys' fees and costs of litigation is granted, *in part*. Pursuant to 15 U.S.C. §1693, Plaintiff is awarded $9,598.50 in attorneys' fees and $742.08 for costs of litigation. An Order consistent with this Memorandum Opinion follows.

NITZA I. QUIÑONES ALEJANDRO, U.S.D.C. J.

---

[27] *See* Affidavit of Darren L. Harrison, Esquire ¶10. [ECF 23-2].
[28] *See* Invoice, Barkat Law Firm. [ECF23-2].